# CHARLESTON.

FISHER *v.* WEST VIRGINIA & P. R. CO.

(BRANNON, PRESIDENT, Absent.)

Submitted January 22, 1894.—Decided April 11, 1894.

1. RAILROAD COMPANIES—DAMAGES.

A railroad company chartered by the state can not without legislative authority by lease or by any other contract or arrangement turn over to another company its road and the use of its franchises, and thereby exempt itself from responsibility for the conduct and management of the road. *Ricketts* v. *Railway Co.* 33 W. Va. 433 (10 S. E. Rep. 801).

2. RAILROAD COMPANIES—DAMAGES.

A railroad company as a carrier of passengers is not an insurer; but its duty is to carry them safely, using the utmost care, as far as human skill, dilligence and foresight can reasonably be required to go; but the passenger must not be guilty of contributory negligence.

3. RAILROAD COMPANIES—DAMAGES.

A passenger is riding on the platform of the car in such a state of intoxication as to be careless and heedless of the danger to which he is exposed. It is the duty of the railroad company, after the conductor has notice of his condition and exposure to danger, to use the ordinary precautions for his safety, such as calling his attention to the danger, and the rules of the company forbidding such exposure, and inviting him to go inside of the car.

4. RAILRAOD COMPANIES—DAMAGES—NEGLIGENCE.

It is the duty of a passenger unnecessarily riding on the platform of a car in motion to go into the car when requested by the conductor or other person having charge of the train, when there

is standing room inside ; and, if by reason of his refusal to do so and by going down on to the steps of the car without the knowledge of the conductor or other person having charge of the train he loses his balance, falls overboard and is injured, he is guilty of contributory negligence, such as will preclude his recovery for such injury.

5. NEGLIGENCE—DAMAGES.

The question of contributory negligence is a mixed question of law and fact, and, while it is a question for the jury to determine, it must be determined by them by applying the law to the facts, and where instructions are given by the court, pertaining to the questions at issue, which propound the law correctly, they can not be disregarded in reaching their verdict, and if instructions asked for by the plaintiff, and given, are calculated to mislead the jury as to the questions at issue, which are excepted to by the defendant, a verdict in accordance therewith will not be sustained.

6. NEGLIGENCE—DAMAGES.

One can not voluntarily incapacitate himself from ability to exercise ordinary care for his own self-protection, and then set up such inability as an excuse for his failure to use care ; and if the intoxication contributed to the injury, as a proximate cause thereof, it is a complete bar to any action for any damages sustained in consequence of it.

J. BRANNON and W. W. BRANNON for plaintiff in error :

I.—*Instructions not based on evidence irrelevant.*—10 Gratt. 13 ; 11 Gratt. 587 ; 31 W. Va. 683 and 684 ; 10 Gratt. 236 ; 26 Gratt. 594 ; 1 Bart. L. P. 2, 656, note 5.

II.—*The established facts in the case do not justify charge of negligence against defendant.*—54 Am. and Eng. R. cases, 640 and cases cited.

III.—*Defendant has right to prescribe reasonable rules for its business.*—Bus. Law Pers. Inj. § 156 and cases cited.

IV.—*No right of recovery when passenger exposes himself to danger.*—Patt. R. Acc. 272 and 273 ; 2 Beach Law of R. §§ 860 and 993 ; Beach Con. Neg. 149 ; 11 S. E. Rep. 187 ; 2 Woods R. L. § 303 ; 18 Am. St. R. 544 ; 2 Beach L. of R. 860 ; Deer. Neg. 92 ; 78 Va. R. 645 ; 35 W. Va. 389 ; Schoul. Bailm. and Carr. § 652, p. 707, note 3 ; Beach Con. Neg. 286 and note 3.

V.—*Intoxication as bearing on contributory negligence.*—4 Am. & Eng. Enc. of L. p. 78, § 34 and cases there cited ; 37 W. Va. 87.

J. J. DAVIS and C. C. HIGGINBOTHAM for defendant in error :

I.—*No error in the first instruction for the defendant in error.* —Beach Contrib. Neg. § 144; 11 Gratt. 697; 29 Gratt. 431 ; 14 How. 468; 102 U. S. 451; Cool. Torts, 768.

II.—*There is no error in the second instruction given by the court at the request of the appellee.*—35 W. Va. 390–403 ; Beach Contrib. Neg. § 54; 1 Harr. Dam. § 341 ; Cool. Torts, 812 ; 2 Am. & Eng. Enc. Law, 748 ; 10 M. and W. 546 ; 9 Ex. 91 ; 10 Ex. 100; 1 App. Cas. 754; 5 E. & B. 195; 85 E. C. L.; 12 C. B. (N. S.) ; 2, 104 E. C. L.; 5 C. B. (N. S.) 573 ; 94 E. C. L ; 43 Mo. 380 ; 37 Mo. 537 ; 36 Mo. 351 ; 36 Mo. 484 ; 40 Mo. 153 ; 40 Mo. 506 ; 11 Irish Com. Law, 377 ; 46 Ill. 76; 51 Ill. 333; 4 Bush, 593; 5 Bush, 1 ; 18 Ga. 679 ; 19 Ga. 437 ; 19 Ga. 443 ; 17 W. Va. 191; 16 W. Va. 397; 9 C. & P. 613 ; 38 E. C. L.; 7 Q. B. 339, 378, 53 E. C.; 12 Q. B. 439, 64 E. C. L.; 2 B. & S. 106, 110 E. C. L.; 6 B. & S. 709, 118 E. C. L.; 27 Conn. 393 ; 56 Cal. 513 (8 Am. & Eng. R. R. Cas. 314); 37 Cal. 409 ; 5 Colo. 197 (8 Am. & Eng. R. Cas. 410) ; 24 Md. 84 ; 24 Vt. 487 ; 16 Conn. 421 ; 3 Ohio St. 172; 16 Neb. 332 (19 Am. & Eng. R. R. Cas. 25); 62 Md. 391 (19 Am. & Eng. R. R. Cas. 261); 61 Md. 154 (19 Am. & Eng. R. R. Cas. 321) ; 5 Duer, 27 ; 18 N. Y. 248; 33 Md. 542; 7 Bush (Ky.) 235 ; 6 Bush (Ky.) 574; 24 Ind. 26 ; 42 Ark. 321 (19 Am. & Eng. R. R. Cas. 30); *sed cf.* 86 Pa. St. 139 ; 42 Pa St. 493 ; 49 Pa. St. 193 ; 92 Pa. St. 475; 68 Mo. 593 ; 72 Mo. 414 (3 Am. and Eng. R. R. Cas. 365) ; 60 Mo. 482 ; 65 Mo. 22 ; 81 Mo. 434 (22 Am. & Eng. R. R Cas. 534); 71 Mo. 476 (2 Am. & Eng. R. R. Cas. 191).

III.—*The court committed no error in striking out the special plea shown on page 10 of the record. It was a plea in abatement. It was not verified by affidavit.*—Code, 1891, 806 ; Code, 1887, 786 ; Acts 1882, 159 ; Code, 1868, 605 ; 10 W. Va. 507.

IV.—*The matter set up in the plea was no ground for the dismissal of the plaintiff's action.*—33 W. Va. 433, 434, 435 and 436.

V.—*It is the duty of railroad companies to make regulations*

*for the safe conduct of passengers and to publish the same.*—
2 Am. & Eng. Enc. L. 759 ; 26 Ia. 124 ; 30 Pa. St. 238 ;
32 Pa. St. 326 ; 56 Pa. St. 294 ; 32 Pa. St. 414 ; 11 Neb.
177.

VI.—*It is the duty of a carrier to enforce its regulations.*—2 Am.
& Eng. Enc. Law ; 88 N. C. 536 ; (18 Am. & Eng. R.
R. Cas. 391) ; 86 N. C. 139.

VII.—*A passenger's ticket entitles him to a seat.*—2 Har-
ris' Dam. Corp. § 614 ; 83 Mo. 454 ; 31 N.
E. Rep. 406 ; 38 Ill. App. 33 ; 85 Mich. p. 12 ; 142
Pa. 47 ; 15 S. W. Rep. 572 ; 35 P. Rep. 245 ; 32 Mo.
438 ; 84 Ga. 553 ; 148 Mass. 343 ; 34 N. Y. 670 ; Scoul.
Bail. & Carr. § 642 ; 3 Am. Repts. 581 ; 12 Am. Repts.
720 ; Whitt. Sm. Neg. 303–304, and notes ; 98 N. Y.
650 ; 35 Barb. 389 ; 34 N. Y. 670.

ENGLISH, JUDGE :

This was an action of trespass on the case brought by
John H. Fisher, an infant acting by his next friend, John
S. Fisher, against the West Virginia & Pittsburg Railroad
Company in the Circuit Court of Lewis county, to recover
from the defendant damages alleged to have been occa-ion-
ed by the negligence of the defendant in carrying the plain-
tiff as a passenger over its road from the town of Weston
to the town of Buckhannon in this state. The defendant
appeared at rules, demurred to the declaration and pleaded
not guilty ; also filed a special plea in writing setting up
therein that at the time the injury occurred and before that
time the defendant had leased its road to the Baltimore &
Ohio Railroad, and the said last named road was the lessee
in possession of and operating the said road, at the time the
alleged injury occurred, and should have been made sole
defendant, which plea was rejected, and issue was joined up-
on the plea of not guilty. The case was tried before R. G.
Linn, special judge. The defendant's demurrer to the de-
claration was overruled, and, it appearing that said John
H. Fisher was then over the age of twenty one years, it
was ordered that the case proceed in the name of said John
H. Fisher. On the 15th day of March, 1893, the case was
submitted to a jury, who rendered a verdict for the plain-

47

tiff assessing his damages at three thousand and five hundred dollars; and thereupon the defendant moved the court to set aside the verdict and grant it a new trial, on the ground that the same was contrary to the instructions of the court and to the evidence and on other grounds set forth in the bill of exceptions, which motion was overruled; and judgment was rendered for the plaintiff on the verdict; and this writ of error was applied for and obtained.

The first error assigned by the plaintiff in error is that the court erred by rejecting the plea in writing filed by the defendant. This assignment, however, I do not regard as well taken, as the question raised by this plea was before this Court in the case of *Ricketts* v. *Railway Co.*, 33 W. Va. 433 (10 S. E. Rep. 801) in which it was held that "a railroad company chartered by a state can not without distinct legislative authority by lease, or any other contract or arrangement turn over to another company its road and the use of its franchises, and thereby exempt itself from responsibility for the conduct and management of the road;" the plea relied on in this case averring that the defendant had leased its road and rolling stock, *etc.*, to the Baltimore & Ohio Railroad Company before this injury occurred, and the Baltimore & Ohio Railroad Company was the lessee of the defendant at the time supposed grievance occurred, *etc.*

The next assignment of error pertains to the action of the court in giving instructions No. 1 and 2 asked for by the plaintiff, which read as follows:

Instruction No. 1: "The court instructs the jury that, in the transportation of passengers, a railroad company is bound to exercise more than ordinary care and diligence, and is liable for the slightest negligence, against which prudence and foresight could have guarded."

Instruction No. 2: "The court instructs the jury that although the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the injury, yet if they find from the evidence that the defendant, after having notice of plaintiff's dangerous exposure, did not exercise ordinary care and diligence to prevent his injury, the plaintiff's negligence will not excuse nor relieve the defendant from liability."

These instructions were objected to by the defendant, the objection was overruled by the court, the instructions given to the jury, and the defendant excepted. Do they propound the law correctly?

As to instruction No. 1, in my opinion the Circuit Court erred in giving it to the jury without qualification. While it is true that it is the duty of a common carrier of passengers to use the utmost care in providing for their safety, yet I can well see how a jury might be misled by the instruction referred to. To instruct the jury that, in the transportation of passengers, a railroad company is bound to exercise more than ordinary care and diligence, is a proposition we can readily accede to; but to add, without qualification, that it is liable for the slightest negligence, against which prudence and foresight could have guarded, appears to me to have a direct tendency to mislead the jury to the prejudice of the defendant, especially under the state of facts disclosed in this case, unless the jury had been further instructed, that the plaintiff could not recover, if he himself was guilty of contributory negligence. The facts proved in this case clearly show that the plaintiff was guilty of contributory negligence; and instruction No. 1, taken by itself, leaving out any reference to the question of contributory negligence, would have a strong tendency to mislead the jury and should not have been given. Barton states the law, in his Law Practice, as follows (in volume 1, p. 656): "The court is not bound to give an instruction upon a mere abstract question, and, if it does so under circumstances calculated to mislead the jury, such an instruction will be error for which the judgment will be reversed;" citing *Pasley* v. *English*, 10 Gratt. 236. Again, in the case of *McKelvey* v. *Railway Co.*, 35 W. Va. 501 (14 S. E. Rep. 261) sixth point of syllabus, this Court held that a bad instruction is not cured by a good one; though they be given on the motion of adverse litigants; the bad instruction should be withdrawn. BRANNON, J., delivering the opinion of the court in that case says: "I find it stated in *Railroad Co.* v. *Maffit*, 67 Ill. 431, that the fact, that the law is accurately stated on one side, will not obviate errors of instruction on the other side; and in *Imhoff* v. *Railroad Co.*, 20

Wis. 362. 'Error in instructions is not cured by the court afterwards instructing directly to the contrary, and so leaving the jury to digest the contradiction. The error should be retracted;' also, in *Clay* v. *Miller*, 3 T. B. Mon. 146, 'An erroneous instruction can not be corrected by another instruction which may state the law accurately, unless the erroneous instruction be thereby plainly withdrawn;'" citing *Kingen* v. *State*, 45 Ind. 518; *Railroad Company* v. *Kendrick*, 40 Miss. 374; *Railroad Company* v. *Stallmann*, 22 Ohio St. 2.

In considering the propriety of instruction No. 2, which was asked for by the plaintiff and given to the jury by the court, it becomes necessary to inquire, what is intended in said instruction by the words "dangerous exposure," of which it is implied by the phraseology of the instruction that the defendant had notice, and what was the proximate cause of the injury complained of: First, let us inquire what was the condition of the plaintiff at the time he took passage on the cars, and at the time the accident occurred. Oh cross-examination the plaintiff himself was asked, "Had you been drinking when you were making that trip?" His reply was, "I had a drink or two." He was asked, "You were a litttle intoxicated?" and answered "I wasn't drunk." Again the question was propounded, "Where did you drink?" and he said in reply, "I don't know but that I took a drink or two on the train. I think I did." He also stated that his father was in the car.

Now, when we consider the fact, shown by the testimony, that the car was running at the rate of ten miles an hour, and that this young man met with his sad misfortune only seven miles and a half from Weston, and that he had taken two drinks in travelling that distance, the strong inference is that his object in remaining on the platform was not to get fresh air, as he stated, but that he might take an occasional drink as he went along. The quantity he took at these drinks does not appear. Neither does it appear that the conductor had notice that he had liquor with him. But the inference is plain that his condition at the time of the accident may have been very different from what it was at the time the conductor took up his ticket.

Now, then, as to the position the plaintiff was occupying at the time of the accident. He says: "I was standing on the platform; may be one step down on the steps. Had one hand hold of the iron next to the coach, and one in front of the coach, on the left side, going to Buckhannon." That he was standing there, and let let loose with his left hand, still holding with his right hand, and the train made a sudden tilt, and threw him right face first. That he held on, but his hand slipped down to the bottom of the rail, as far as it would go, and he let loose and fell. And on cross examination, in answer to the question, "You say you were on the steps and went out?" answered "Yes, sir."

Now the exposed position the plaintiff took upon the steps of the car was manifestly the proximate cause of his injury; and no witness in the case states that the conductor or any other officer of the car or train had notice of the fact, that the plaintiff was on the steps holding to the iron railing on the sides thereof. This Court has frequently held, that instructions, which are not based upon or applicable to the facts proven, should not be given to the jury, although they may be correct, as abstract principles of law. See *Coffman* v. *Hedrick*, 32 W. Va. 120 (9 S. E. Rep. 65); *Kinsley* v. *County Court*, 31 W. Va. 464 (7 S. E. Rep. 445); *Kerr* v. *Lunsford*, 31 W. Va. 662 (8 S. E. Rep. 493); *Evan's Case*, 33 W. Va. 417 (10 S. E. Rep. 792); *Bridge Co.* v. *Wheeling & B. Bridge Co.*, 34 W. Va. 155 (11 S. E. Rep. 1009).

In the case of *Carrico* v. *Railway Co.*, 35 W. Va. 390 (14 S. E. Rep. 12) in the seventh point of the syllabus, this Court held as follows: "The general rule in regard to contributory negligence is, that if the negligence be mutual on the part of the plaintiff and defendant, there can not be a recovery. But the injury would have happened just the same, although the plaintiff had been in no wise negligent, his negligence will not prevent his recovery, or if the defendant, after he has discovered the dangerous exposure, refuses or neglects to practice any care or precaution to prevent the injury, he will be held liable."

The instruction we are considering in this case should

not have been given to the jury, because it is not based upon or applicable to the facts proven. It assumes, that the evidence shows, that some officer of the train had notice of the plaintiff's exposed position on the steps of the car, while no witness proves such notice. The fact, that the conductor had notice of the fact, that the plaintiff was on the platform of the car, will avail him nothing, unless he received his injury because he occupied that position. We can well see a great difference, so far as danger is concerned, between occupying a position on the steps of a moving car and occupying the platform, which the evidence shows was surrounded by railing; and notice of one would be no notice whatever of the other, and the defendant could not have been expected to exercise ordinary care or diligence to prevent the plaintiff's injury, until it had notice of his dangerous position. The plaintiff might have gone on to the engine or the cowcatcher, and thus exposed himself to imminent danger; but if he had done so without the knowledge of the defendant, although he had been injured as a consequence, the defendant would not be liable. For these reasons I think said instruction No. 2 should have been rejected.

The next assignment of error is to the action of the court in refusing instructions Nos. 4 and 5 asked for by the defendant. These instructions, as asked for by the defendant, were modified by the court, and given as follows:

Instruction No. 4: "If the jury believe from the evidence that both the plaintiff and defendant were guilty of negligence; that such negligence of both was concurrent, or running together, and co-operated to produce the injury complained of, they should find for the defendant, unless it appears from the evidence that the defendant had notice of the negligence of the plaintiff, and refused or neglected to practice any care or precaution to prevent the injury.'

Instruction No. 5: "If the jury believe from the evidence that the injury in the declaration mentioned was the result of the concurrent negligence of both the plaintiff and the defandant, the jury has no right to apportion the* fault, and to find a verdict for the plaintiff upon that ground. But in such case they should find for the defendant, unless

they further find that the defendant had knowledge of the danger of the plaintiff, and refused or failed to practice any care or precaution to prevent the injury."

The modification in each of these instructions consists in the words following the word "unless;" and these instructions, in the form in which they were given as modified, were erroneous and should not have been given, because the modification is not supported by or applicabls to the evidence in the case.

The defendant by its counsel moved the court to set aside the verdict of the jury and grant it a new trial on several grounds, and, among others, because the verdict was contrary to the instructions of the court, and the court at the instance of the defendant, instructed the jury that, "as a matter of law, a regulation of a railroad company which forbids passengers to stand upon the platform while the car is in motion is a reasonable and proper rule; and if a passenger, in violation of such regulation, unnecessarily exposes himself, he does so at his own peril." Now, Mr. Jeffries, the conductor on cross-examination, when asked what he said to the plaintiff, replied that he took plaintiff's ticket up, and told him to go inside and ride; that it was against the rules; and after going three miles he again asked him to go in; that it was against the rules of the railroad company; and he talked very mildly, and said he wanted to ride out there, and get some air. Upon the question of fact as to whether the conductor told plaintiff it was against the rules of the company, the plaintiff himself, when placed on the stand, does not contradict the conductor, and there is no conflict upon that point of evidence.

Upon this question, Beach on Contributory Negligence, in section 151, states the law as follows: "If the passenger would hold the carrier to the full measure of his responsibility for safe carriage, he must conform to all the reasonable rules the carrier makes, looking to the passenger's safety and convenience; and, if he violates such rules and regulations by riding where he has no right to ride, it is no very harsh rule that requires him to do it at his own peril." After commenting on the law, in the same section, as to where the conductor or trainmen consent or encourage a

passenger to ride in a place of danger, the section concludes with a quotation from the opinion of the court in the case of *Railroad Co.* v. *Langdon*, 92 Pa. St. 21, as follows : "We are unable to see how a conductor, in violation of a known rule of the company, can license a man to occupy a place of danger, so as to make the company responsible." Beach on Contributory negligence (page 347) says : "Where it appeared that the plaintiff had been drinking, was riding on the front platform (although without objection) and stepped to the lower step to permit persons to pass, and that a sudden movement of the car, by which he was injured, was not unusual, and should not have been unexpected, it was held that a nonsuit should have been granted." Wood on Railroads (volume 2, § 304, p. 1277) states the law on this point thus : "A passenger who voluntarily rides in a baggage car or other known place of danger in violation of the known rules of the company, and is injured in consequence of such violation, can not recover damages therefor, even though he is there by permission of the conductor ; and, in the absence of any proof upon that point, it will be presumed that the passenger knew of the danger, and the regulations forbidding passengers from riding in the baggage car;" citing *Railroad Co.* v. *Clemmons*, 55 Tex. 88. The rule is also stated—as we think, properly—in Patterson's Railway Accident Law (page 250, § 248) where it is said : "It is both the right and the duty of the railway to make regulations for the safe conduct of its business ; but those regulations must be reasonable in themselves, and must be so published that all persons who are to be affected thereby may have an opportunity of learning the existence and effect of such regulations. Where the regulations are in themselves reasonable, and have been properly published, the passenger is bound to inform himself as to their effect, and he must conform thereto. Thus, in *Sullivan* v. *Railroad Co.*, 30 Pa. St. 238 ; Woodward, J., said the passenger's consent is implied to all the company's reasonable rules and regulations for entering, occupying, and leaving their cars ; and, if injury befall him by reason of his disregard of regulations which are necessary to the conduct of the business, the company are not liable in damages, even though the negligence

of their servants concurred with his own negligence in producing the mischief;" citing *Britton* v. *Railway Co.*, 88 N. C. 536; *Railroad Co.* v. *Rose*, 11 Neb. 177 (8 N. W. Rep. 433).

So far as publishing the rules is concerned, in the case under consideration, that was not necessary, for the reason that the conductor gave the plaintiff personal notice, that it was against the rules to ride outside the passenger car. Wood on Railroads (volume 2, p. 1272, § 303) under the heading, "Injuries Resulting from Passenger Putting Himself Voluntarily in a Dangerous Position," says: "Railroad companies are only bound to exercise due care that a passenger is not injured through their fault, and are not required to exercise such a supervision over him as absolutely prevents his being injured by his own fault;" citing *Malcom* v. *Railroad Co.*, 106 N. C. 63 (11 S. E. Rep. 187) where the text is quoted with approval. In other words if a passenger puts himself in a dangerous position, he can not claim idemnity from the company.

In a case where a stock drover was riding on an engine with several others when another engine suddenly came in sight, round a curve, and all the others jumped off, but the decedent, who remained and was killed, the court charged the jury that if the defendant's employes were negligent, and the decedent was rightfully riding on the engine, the plaintiff could recover; and this was held, under the pleadings, to be erroneous, as it disregarded the question of contributory negligence of the decedent. *Railway Co.* v. *Shacklet*, 105 Ill. 367.

In the case of *Malcom* v. *Railroad Co.*, 109 N. C. 63 (11 S. E. Rep. 187) it was held, that a passenger on a freight train, who stands on the rear platform without holding to anything, is guilty of contributory negligence, and can not recover for any injury, which he may sustain, by reason of the sudden starting of the train. The court in its opinion says after speaking of the duty of the railroad to give signals before starting: "Apart from this, we are of opinion that the plaintiff was guilty of contributory negligence. 'Railroad companies are only bound to exercise due care that a passenger in not injured through their fault, and are

not required to exercise such a supervision over him as absolutely prevents his being injured by his own fault.    In other words, if a passenger puts himself in a dangerous position, he can not claim indemnity from the company.'    2 Woods R'y Law, § 303.    'The company, as held in some of the cases, can not be expected to treat its passengers as children or to put them under restraint.    Passengers must take the responsibility of informing themselves concerning the every-day incidents of railway travelling; the company could do business on no other basis.    *Mitchell* v. *Railroad Co.* (Mich.) 16 N. W. Rep. 388.' "    The court further says : "The plaintiff must have been aware of the dangerous position in which he placed himself.    He was warned of the danger by the regulations of the defendant forbiding passengers to ride upon platforms.    He must have known of the sudden startings and joltings peculiar to freight trains, and he must also have known, when he placed himself upon the platform, that the train was likely to start at any moment.    Notwithstanding all this, he leaves his seat in the coach, and puts himself in this dangerous position, without even taking the simple precaution of supporting himself by holding to the railing, or anything else.    That no recovery can be had, under such circumstances, is, it seems to us, too plain for further discussion."

On the question of the duty of the passenger, it was held in the case of *Graville* v. *Railroad Co.*, 105 N. Y. 525 (12 N. E. Rep. 51) that "it is the duty of a passenger standing on the platform of a steam-railroad car to go inside when requested so to do by a person having charge of the train, if there is standing room inside, although there are no vacant seats.    The fact that the passenger has a well-founded ground of complaint against the railroad company, for not providing adequate accommodations for passengers, does not release him from the duty of leaving the platform.    As to whether, where a passenger refuses to go inside the car when so requested, the brakeman or conductor has the right to force him to do so, *quaere ?*"

Returning to the point as to the position occupied by the plaintiff at the time the accident occurred, it may be said that the steps of the car form a part of the platform, and

that being on the steps was the same as being on the platform. The steps, however, constitute no part of the platform. The steps might be removed or broken off, and the platform would still remain. The steps are the means of ingress and egress to and from the platform, and we can not say that a party, who was standing on the steps of the car was standing on the platform. The steps must be regarded as a more dangerous place for a passenger to occupy, while the car is moving, than the platform ; and a conductor might be under the impression that a passenger was on the platform, and act very differently from what he would if he had noticed that he was standing down on the steps. It is true that when the plaintiff refused to go inside the car upon request of the conductor, the conductor might under the regulations have stopped the car and put the plaintiff off; but no conductor under the circumstances of this case would feel warranted in resorting to such an extreme measure. While it is true this young man was not conducting himself altogether as he should—was drinking to some extent—yet the conductor could not say that he was so much under the influence of liquor as to render him incapable of taking care of himself, and the plaintiff himself swears that he was not drunk. His father was present in the car, and was evidently trying to get his erring son to return to his home ; and a conductor possessing the instincts of a gentleman would not feel warranted in seizing the young man and forcibly ejecting him from the cars, because he objected to going inside ; and if he had done so, he might have incurred the risk of a suit against his company. He says he was not drunk, and his counsel say the same, by putting him on the stand to contradict the conductor as to what passed between them when requested to go into the cars and also as to whether there were vacant seats in the car. It is presumed, however, that his father would not have done such an idle thing as to request the conductor to get him to come in, if there was no room in the car. The evidence, however, shows that he was drinking before he came into the car, and after he got on the car ; and the court instructed the jury that in determining the question of contributory negligence they might take into considera-

tion the condition of the plaintiff at the time—that is, if he were intoxicated at the time of the injury, or partly so, they might take this fact into account in determining whether he was guilty of contributory negligence.

Upon this question, Wood on Railroads (volume 2, p. 1457) states the law as follows: "The fact that the person injured was at the time intoxicated does not necessarily constitute contributory negligence on his part, though this fact is to be considered with others in determining whether or not he exercised ordinary care to protect himself. One can not voluntarily incapacitate himself from ability to exercise ordinary care for his own self-protection and then set up such incapacity as an excuse for his failure to use care; and if the intoxication contributed to the injury, as a proximate cause thereof, it is a complete bar to any action for damages sustained in consequence of it;" citing *Railroad Co.* v. *Cragin*, 71 Ill. 177; *Railway Co.* v. *Pankhurst*, 36 Ark. 371; *Fitzgerald* v. *Town of Weston*, 52 Wis. 354 (9 N. W. Rep. 13); *Railroad Co.* v. *Bell*, 70 Ill. 102, and other cases.

While it is true that negligence is a mixed question of law and fact, and Wood on Railroads (volume 2 p. 1458) so states the law and says, that when there is no dispute about the facts nor any doubt as to the proper inference to be drawn from them, the question as to what is proper care may be a question of law; but where either the facts or the conclusions to be drawn therefrom are at all doubtful the question must always be submitted to a jury. And because in determining the character of plaintiff's conduct, it is necessary to find whether or not he acted as a man of ordinary prudence would have acted under the same circumstances, the question is necessarily one for the jury except in very plain cases, where there is no room for a reasonable difference of opinion. If the facts are such, that a verdict for the plaintiff could not be sustained, the question is one of law and should be determined by the court. Upon this question the case of *Railroad Co.* v. *Landuer* (Neb.) 54 N. W. Rep. 976, states the law as follows:

"It is the settled rule in this state that where different minds may draw different inferences from the same state of

facts, as to whether such facts establish negligence, it is a proper question for the jury, and not for the court; but that rule is subject to the qualification that the inference of negligence must be a reasonable one.   Where it is impossible to infer negligence from the established facts without reasoning irrationally, and contrary to common sense and the experience of average men, it is not a question for the jury, and the court should direct a verdict for the defendant."

What negligence was the defendant guilty of in this case? If the injury resulted from intoxication, this was the fault of the plaintiff not of the defendant.   If he was slightly intoxicated, when he took the train, and increased his intoxication, after he became a passenger this fact does not appear to have been known to the defendant; and it is held in the case of *Milliman* v. *Railroad Co.* 66 N. Y. 643, that "the fact that a man is intoxicated does not alone deprive him of the right to ride upon a railroad car, nor does it free the company from its duty to render him as a passenger due care.   It is the duty of a carrier of passengers to observe the same care to a drunken as to a sober passenger."   It does not appear, that any officer of the train knew of the dangerous position the plaintiff had taken on the steps   It does appear, that he refused to go into the car, when politely invited so to do ; and he does not complain, that the car was not stopped, and himself ejected therefrom.   It can not be said that the defendant after it discovered the dangerous exposure, refused or neglected to practice any care or precaution to prevent the injury.   Neither can we say that the injury would have happened just the same, although the plaintiff had been in no wise negligent.   Therefore, the defendant can not be held liable, under our ruling in the case of *Carrico* v. *Railway Co.*, 35 W. Va. 390 (14 S. E. Rep. 12.)

As we have seen, the question of contributory negligence is a mixed question of law and fact; and, while it may be a question for the jury, yet the jury must take the questions of law involved in the case from the court, and apply them to the facts, in reaching their conclusion, and if, at the instance of the plaintiff, instructions are given to the jury

which are misleading, and not in accordance with the law, or if the jury disregards instructions which are given at the instance of the defendant, and which propound properly the law, the question becomes a question for the court, and the verdict may be set aside.

My conclusion, therefore, is that the court erred in refusing to set aside the verdict in this case, and award the defendant a new trial. The judgment complained of is reversed, the verdict set aside, and a new trial awarded the defendant; and the defendant in error must pay the costs of this writ.

---

HOLT, JUDGE (*dissenting*):

This is a suit brought in the Circuit Court of Lewis county on the 29th of August, 1891, by John II. Fisher, by his next friend, against the West Virginia & Pittsburg Railroad Company for injury inflicted on plaintiff, by defendant's negligence, while being carried as a passenger on its train. A trial by jury on plea of not guilty resulted in a verdict for plaintiff of three thousand and five hundred dollars for which the court gave judgment having overruled defendant's motion for a new trial, and this writ of error was allowed.

As to the material facts, there was but little if any conflict of testimony. But giving the plaintiff the vantage ground of his verdict, where and if such conflict exists, the facts are in substance as follows:

On the 18th day of October, 1890, defendant ran a local mixed train—freight and passenger car—from Weston to Buckhannon; but one passenger car, and that in the rear. Plaintiff and his father John S. Fisher, bought tickets, and were passengers. The father had a seat, but the car was crowded full of people; but little, if any, sitting room. There was standimg room. Perhaps a seat could have been found, but plaintiff was drinking—was intoxicated. He did not enter the car, but rode standing out on the front platform. He was under the influence of whiskey; at least seemed to the conductor to be so; according to his own testimony, had whiskey with

him and took two or three drinks on the platform. The father knew that plaintiff had been drinking some, and being uneasy went out to where his son was on the front platform and told him he had better come into the car Plaintiff said he would do so in a few minutes; but, as he did not do so, the father requested the conductor to go out and bring him in. The conductor stood around for a short time, and then went out on the platform where plaintiff was. He came back without him; told John S. Fisher, the father, that he was in no danger; "that, as long as they did not stagger, they were all right." The conductor states in his testimony that the platform is regarded as a very dangerous position to occupy, and that the rules of his company required him to make plaintiff come into the car; and if he refused it was his duty to stop the train, and put him off. Plaintiff remained on the platform; and about seven and one half miles out on the road, about half way back to Buckhannon, in running at ten or twelve miles an hour round a sharp curve, plaintiff was thrown out, or fell out, to the left. The hind truck ran over both feet, making amputation of both feet, back to the heels, necessary. He was taken up, and carried to his home at Buckhannon, where this surgical operation was at once properly performed; leaving him a bad cripple for life, unable to stand or walk without crutches and artificial feet, which he has at a cost of one hundred dollars. He was about twenty years of age, earning about one dollar and twenty five cents per day. He can now do nothing requiring him to walk or to stand; and the left foot, not being healed, will, in all likelihood, soon require some further amputation. His condition shows that he was intoxicated to such a degree as not to realize the danger of falling off, to which he was exposed. He stood upon the step, holding with one hand. He was plainly to some extent unconscious of his exposure to the danger of falling off, and did not anticipate and therefore was heedless of the accident likely to ensue. The conductor noticed his intoxication and telling him, that it was against the rule to ride there, asked him to go in. The brakeman noticed, when he got on the train, that he had been drinking; he acted like he was intoxicated; asked

him to go into the car. And, as we have already seen, the
father, seeing that his son had not come into the car, and
knowing his condition felt uneasy for his safety and re-
quested the conductor to go out and bring him in. The
conductor went out on the platform where the plaintiff was,
and came back without him, and told John S. Fisher, the
father, as already stated, that plaintiff was in no danger.
"As long as they did not stagger, they were all right."

The foregoing statement of facts is intended to present
"the exact anatomy of the case." As is usual in such
cases, this one has opened up a wide field for discussion, as
appears from the cases and books cited. Still, in my view,
in the attitude in which it is here presented, giving the
plaintiff the vantage ground of a verdict and judgment in
his favor in an action for negligence against a carrier of
passengers conceded to be to some extent in fault, its de-
termining factors both of law and fact ought to lie within
a narrow compass.

Four grounds of error are assigned by plaintiff in error :
No. 1. The court erred in rejecting a special plea. No. 2.
In giving to the jury the two instructions asked by plain-
tiff. No. 3. In modifying defendant's instructions Nos. 4
and 5. No. 4. In overruling defendant's motion for a new
trial.

No. 1 : This special plea averred, in substance, that at
the time of the accident and injury complained of the Bal-
timore & Ohio Railroad Company was the lessee, owner
and operator of the West Virginia & Pittsburg Railroad,
by virtue of a deed of lease before that time duly signed,
sealed and delivered ; that if there was any cause of action,
as averred, the Baltimore & Ohio Company, alone, ought
to be made defendant—praying judgment that the writ and
declaration might be quashed, *etc.;* that is, that, without
reference to the merits, the suit has been brought against
the wrong person, in an improper manner, as to the party
made defendant. This, if true, would go in support, of the
general issue, as it contradicts the declaration on a mate-
rial point. Nor does it in its nature belong to that class of
defences which are good in bar or abatement, at the option
of the defendant. A judgment on the plea for defendant

that the writ and declaration be quashed must, in its nature, in such a case, if it amounts to anything, be conclusive of the right of action against defendant, either alone or conjointly with another; for it would not have been good if it had averred as the ground that the Baltimore & Ohio Company was a joint doer of the thing complained of, for, in such case of tort, plaintiff may sue one or both. It was intended, no doubt, to give notice of one of the grounds of defence, or rather to raise in advance the question of defendant's liability under the state of facts averred in the plea. As a plea in abatement, it was excepted to for want of affidavit; for, by the statute (section 39, c. 125) "no plea in abatement or plea of *non est factum* shall be received, unless it be verified by affidavit." But the true question on the merits is settled by the case of *Ricketts* v. *Railway Co.* 33 W. Va. 433, 436 (10 S. E. Rep. 801): "We think it may be stated, as the just result of the decided cases, and on sound principle, that a railroad corporation can not, without distinct legislative authority, by lease or any other contract, turn over to another company its road, and the use of its franchises, and thereby exempt itself from responsibility for the conduct and management of the road." For, if the defendant railroad corporation still conducts the business of the road as owner, it is liable; if as agent of the lessee, it is liable for its torts; and if the lessee conducts the business in that name, and under the defendant's charter, then, according to the averments contained in the plea, it would be liable under that charter and in that name. There was no error in rejecting the plea.

Error No. 2: The two instructions given for plaintiff against the objection of defendant are as follows: No. 1: "The court instructs the jury that, in the transportation of passengers, a railroad company is bound to exercise more than ordinary care and diligence, and is liable for the slightest negligence, against which prudence and foresight could have guarded." No. 2: "The court instructs the jury that although the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the injury, yet if they find from the evidence that the defendant, after having notice of plaintiff's dan-

gerous exposure, did not exercise ordinary care and diligence to prevent his injury, the plaintiff's negligence will not excuse nor relieve the defendant from liability." Both are taken from the case of *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12). It is conceded in argument that these instructions do perhaps propound the law correctly; but the contention is that they are abstract, not being based upon any evidence in the cause.

The court, at the instance of defendant, gave ten several instructions, which, as modified, were not objected to, and which are as follows:

No. 1: "The jury are instructed that the plaintiff, as passenger on the defendant's car, as a matter of law, is presumed to have taken upon himself all the risks necessarily incident to that mode of travelling; and if the jury believe from the evidence that without the fault of the defendant, but by inevitable accident, plaintiff was injured, the jury should find for the defendant."

No. 2: "The court instructs the jury, as a matter of law, that a passenger upon a railroad train takes all the risk attending that mode of travel, except such as may be caused or incurred by the negligence of the railroad company or its servants; and, unless such negligence by the defendant is shown by the evidence, the jury should find for the defendant."

No. 3: "The court instructs the jury that, as a matter of law, a regulation of a railroad company which forbids passengers to stand upon the platform while the car is in motion is a reasonable and proper rule; and if a passenger, in violation of such regulation, unnecessarily exposes himself, he does so at his own peril."

No. 6: "The court instructs the jury that railroad companies are only required to exercise due care that a passenger is not injured through their fault, and they are not required to exercise such supervision over him as absolutely prevents him from being injured by his own fault."

No. 7: "The court instructs the jury that a railroad company has no right or authority, under the law, to impose upon its passengers any restraint, even to enforce its reasonable rules."

No. 8: "The court instructs the jury that, in detrmining the question of whether the plaintiff was guilty of contributory negligence, they may take into consideration the condition of the plaintiff at the time; that is, if he were intoxicated at the time of the injury, or partly so, they may take this fact into account, in determining whether he was guilty of contributory negligence."

No. 9: "If the jury find that the injury compained of was contributed to by plaintiff's own negligence, and did not result by act of defendant purposely, intentionally, wantonly, maliciously, or recklessly done, they should find for the defendant."

No. 10: "The plaintiff, to recover, must have observed ordinary care to avoid the injury, and, if he does not do so, he can not recover."

One of the lines of argument and presentation of their case made by plaintiff's counsel is as follows: The evidence showed there was only one passenger-car on the train. There was no mail car or baggage car, but mail and baggage were piled in one end of the passenger-car, and that was full of people. That defendant was negligent in not providing a proper place, and in not publishing or making known its rule against riding on the platform, and that although plaintiff's intoxication may have contributed to his taking his place and riding on the front platform, and, together with such dangerous exposure, may have caused his falling off, yet defendant had notice of his dangerous exposure, and that he was under the influence of liquor, yet did nothing to prevent such dangerous exposure to injury, and, so far from enforcing the rule of the company which prohibited the conductor from allowing any one to ride on the platform, and made it his duty to make the passenger go in, or get off, the conductor misled the father, who otherwise might have had the plaintiff (his minor son) brought in out of such danger.

The other line of argument of plaintiff's counsel proceeds upon the theory, that their case is made out without reference to the one crowded car and the failure of the defendant to publish its rule against riding on the platform. It seems to be as follows: The conductor knew that plain-

tiff had been drinking and was under the influence of liq-
uor; that he was on the platform in that condition; that
it was a dangerous place for a sober man—much more, for
one intoxicated. The conductor knew that the rules of his
company prohibited him from allowing any one to ride on
the platform, in consideration of its being a dangerous
place. He knew it was his duty to get plaintiff to go in,
and on his refusal to stop the train and put him off. In
other words, if the conductor had done his plain and sim-
ple duty, he would have prevented the accident, and the in-
jury resulting therefrom.

The case was evidently tried, and the jury instructed, on
the theory that it involved the doctrine of contributory
negligence, as laid down and applied in the case of *Car-
rico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12)
(see point 7) viz. that if the defendant, after he has dis-
covered the plaintiff's exposure to danger, refuses or neg-
lects to practice any care or precaution to prevent the in-
jury, he will be liable; for instructions No. 1 and No. 2
given for the plaintiff are taken literally from the Carrico
Case, and the qualifications appended by the court to de-
fendant's instructions No. 4 and No. 5 are the same as plain-
tiff's instruction No. 2.

In that case there was evidence tending to show that plain-
tiff received his injury by riding with his elbow out of the
window, beyond the line of the body of the car, by reason
of which it was struck and broken in two places by a pile
of stone recently quarried, and piled up close to the track
for the purpose of being loaded and transported. There
was also evidence tending to prove that defendant, by its
employes, had knowledge of the stone piled up close to the
track, and saw plaintiff's elbow protruding, but failed to
give him any warning. The court held that it is legal neg-
ligence for a passenger to ride in a fast-going passenger
coach with his arm protruding out of the window, and be-
yond the line of the body of the car" (point No. 5) and
that "if the defendant, after he has discovered the danger-
ous exposure, refuses or neglects to practice any care or
precaution to prevent the injury, he will be held liable"
(point No. 7). The case was sent back, retried, and again

appealed; and in the same case, at this term, the same doctrine has been again laid down. See same case, *supra*, p. — (19 S. E. Rep. 571.)

In that case the evidence showed that plaintiff, Carrico, was riding with his elbow in the open window at the time of the accident, but, as to whether it was protruding or not, the direct evidence was somewhat conflicting; and, in addition to that conflict, it was also conflicting as to the fact of the conductor having discovered plaintiff's dangerous exposure of his arm before the accident, but there was enough for the case to go to the jury.

In this case three questions of fact were involved: (1) Was the plaintiff riding on the platform in such a state of intoxication as to be, in an obvious degree, unconscious or heedless of his danger? (2) If so, was such fact in any way brought home to the knowledge of the conductor? (3) If the conductor had such knowledge of plaintiff's dangerous exposure, did he refuse or neglect to practice the proper care or precaution to prevent the injury? If so, the court, by its instructions, told the jury that the defendant would be liable.

I have carefully re-read the record, and the briefs, and, in my view, no other material facts were involved. These the jury on the evidence found for the plaintiff, and the court approved the finding. I do not well see how the jury could have done otherwise, unless on the supposition that the conductor had done all to bring him in, or put him out of danger, that was incumbent on him to do; and this is a question of law, for what he did do in that behalf appears affirmatively and without dispute.

What, then, is the duty of carriers of passengers for hire? For this state the question was authoritatively answered in 1854, in the case of *Farish* v. *Reigle*, 11 Gratt. 697; again, in 1859, in the case of *Railroad Co.* v. *Sanger*, 15 Gratt. 230. They are bound to use the utmost care and dilligence of cautious persons to prevent injury to passengers and are bound to carry their passengers safely, so far as human care and foresight can go, being liable for injuries resulting from the slightest negligence. See *Pennsylvania Co.* v. *Roy*, 102 U. S. 451. See, also, *Railroad Co.* v. *Wightman*, (1887)

29 Gratt. 431, 445. The law, in tenderness to human life and limb, holds railroad companies liable for the slightest negligence, and compels them to repel by satisfactory proofs any imputation of such negligence. They are held to the highest degree of practical care under the circumstances presented, and to this standard a philanthropic age must adhere. See Thomp. Carr. Pass. p. 197, § 7, notes, *et seq.; Ingalls* v. *Bills*, 9 Metc. (Mass.) 1; (43 Am. Dec. 346, notes).

Although the term "ordinary care," properly qualified and explained, may be made to measure perhaps more accurately the amount of care, foresight, diligence, and skill required in the particular case, according to its facts, yet the term "extraordinary care" may have a wholesome effect; for one is then more apt to bear in mind the care exacted of a carrier in so perilous a business, and not to confound this particular ordinary care with ordinary care in general, and especially to note that the distinction involved may be one of kind, as well as of degree; so the common mind understands it. I believe it is not claimed that the conductor used the utmost care. I do not see how it can, by this record, be said that he performed his whole duty, was wholly without fault in the matter, whatever be the degree of negligence such fault may imply, or the degree of diligence exacted.

But it is answered that plaintiff can not recover because he was guilty of contributory negligence. He was negligent in becoming intoxicated, for that was his own voluntary wrong. He was negligent in riding upon the platform, for the conductor told him it was against the rules of the company. And although there was but one car, and that was full of people, with one end used to carry baggage, yet, no doubt, he could have found standing room inside, if not a seat. Why did he not go in? He was in a plainly obvious degree unconscious of the danger of riding on the platform in his condition and therefore heedless of it. We need not consider to what extent the conductor had discovered these facts by his own observation; for there is not a particle of evidence, direct or inferential, in contradiction of what the father of the young man said to him and of the

request he made.   The knowledge then imparted, if not known before, and the request of the father then made, imposed upon the conductor a new duty.   This new duty he violated ; not only willfully neglected to perform it, but in all likelihood prevented the father from securing its performance in some other way by lulling his apprehensions of the danger to which his son was exposed, soon resulting in the accident that caused the injury.   In such a case plaintiff's negligence was not the proximate cause in whole or in part of the injury, but the remote cause ; the inducing cause ; the condition which gave rise to the new duty, the existence of which the new duty from its nature, necessarily presupposed.   If plaintiff's negligent exposure to danger imposes upon the conductor the new duty to take the proper care or precaution to prevent injury resulting from it, such negligence of plaintiff can not at the same time be, in whole or in part, the proximate cause of the injury, the happening of which as the result of plaintiff's negligence, the new duty exists only to avoid or avert.   See *Downey* v. *Railroad Co.* 28 W. Va. 732, 737.

Such a test of the proximate cause, in whole or in part, of the injury, is, in my view, just as much out of place in this case as it would have been in the Carrico Case, supposing the plaintiff in that case to have been riding with his elbow protruding out of the window, and, in the language of Dr. Bishop (Noncont. Law, § 467) "Reverse the result in numberless plain cases," from the Donkey Case (*Davis* v. *Mann*, 10 Mees & W. 545) and the case of *Radley* v. *Railway Co.* 1 App. Cas. 754, down to the case of *Carrico* v. *Railway Co.*, 35 W. Va. 389 (14 S. E. Rep. 12) and the same case, *supra*, p—— (19 S E. Rep. 571).   See 2 Thomp. Neg. 1104 *et seq.*.   For a discussion of the character and test of contributory negligence, see, among others, Bish. Noncont. Law, § 458 *et seq.*; Cooley, Torts (2d Ed.) top p. 816 ; Whart. Neg. 300 *et seq.*; Bigelow, Torts (4th Ed.) p. 332; Busw. Pers. Injur. § 97; Whitt. Smith, Neg. c. 5, p. 373; Poll. Torts, p. 374, and Append. D, p. 484; Beach, Contrib. Neg. (2d Ed.) § 7 *et seq.*

This duty thus cast upon the conductor by the request of the father is no relaxation of any duty of plaintiff, nor

excuse of his negligence, but, on the contrary, a new duty, which presupposes and springs out of such negligence of plaintiff, calling upon the conductor to anticipate and avert the injury likely to ensue therefrom. Under the peculiar circumstances of such request it is not sufficient to say, that plaintiff's intoxication is his own voluntary and wrongful incapacitation. Apart from the father's special request, "it is consistent, not only with common humanity, but with the legal obligations of the carrier, that if a passenger is known to be in any manner affected by a disability, physically or mentally, whereby the hazards of travel are increased, a degree of attention should be bestowed to his safety beyond that of an ordinary passenger, in proportion to the liability to injury from the want of it." Thomp. Carr. Pass. pp. 270, 271, § 5. But the condition of the passenger calling for it must be made known. "It may call for special care arising from the particular danger." Bish. Noncont. Law, § 513. See 4 Am. & Eng. Enc. Law, p. 79; *Milliman* v. *Railroad Co.*, 66 N. Y. 643.

If the plaintiff had been, not a drunken passenger on the platform, but a drunken trespasser on the track, known to be unconscious or heedless of his dangerous exposure—say near Miller's crossing where the accident occurred—it will not be denied that the duty would have arisen to take such precautions as were proper to avoid infliction injury. Is the duty to a passenger less? The conductor is in a sense an officer of the common-law; and that law is not only tender of life and limb, but also considerate toward human frailties, as far as may be. And besides being the conductor and as such in command of the train, he is also an officer by statute (section 31, c. 146, Code) made so expressly that he may the more efficiently discharge his duties and meet more effectually the exigencies of such cases as this; and, as I read the law, it does not listen to any such excuses as are offered on his behalf. A helpless passenger on the platform and steps is certainly entitled to not less care and precaution to avert the dangerous exposure, of which he is unconscious or heedless, than the helpless or unconscious trespasser on the track. Apprehending the danger—as it appears from his own

testimoney he did foresee and apprehended it—it was his plain duty to take the ordinary steps, such as the occasion might have required, to make the young man go in off the platform, which he could have done without trouble, or, if that could not have been done, make him get off at one of the several stations or stopping places.

I have given the facts proved fully. They correspond, in substance, with the essential facts alleged. The two instructions given for plaintiff are short, and to the point; both taken, literally, from a recent case three times argued here, and twice affirmed. The jury applied the law given them by the court to the facts as found by themselves from the evidence; and the result is a verdict by the jury, and a judgment by the court, containing, impliedly, the point of law involved correctly drawn, as I think, from the case as made. Ten instructions were given for defendant. To two of them the court added a qualification in order to make them consistent with the instructions given for plaintiff. If any of them are faulty—and I dare say some flaw can be found in so long a list—the plaintiff does not, and defendant can not complain. Under such circumstances, it would seem hard to let the defendant's fault spoil the plaintiff's verdict. However, amid the confusion that seems to prevail on the subject of contributory negligence, I may be mistaken in my view of it, especially in the application attempted to be made, for here, as in other cases, but perhaps to a larger extent, the difficulty lies. The loitering on the platform of passengers is matter of common observation, and it is well understood that they do so at their own risk, and therefore I concede the danger of giving verdicts in such cases. This one, however, has a clearly-defined and strongly-marked exceptional feature. On that I have, for the main, rested my view of this case for I can not bring myself to believe that the conductor discharged the obligation of the new duty imposed upon him by his knowledge of plaintiff's negligent exposure to danger, and the father's request.