# CHARLESTON.

FISHER *v.* WEST VIRGINIA & P. R. Co.

Submitted January 27, 1896—Decided April 11, 1896.

1. RAILROADS—PASSENGERS—CONTRIBUTORY NEGLIGENCE.

   It is the duty of a passenger unnecessarily riding on the platform of a car in motion to go into the car when requested by the conductor or other person having charge of the train when there is standing room inside; and if, by reason of his refusal to do so, and by going on to the steps of the car without the knowledge of the conductor or other person having charge of the train he loses his balance, by reason of a lurch of the car in rounding a curve, and falls overboard, and is injured, he is guilty of contributory negligence, such as will preclude his recovery for such injury.

2. INSTRUCTIONS—JURY—VERDICT.

   Where instructions are given by the court which properly propound the law applicable to the facts proven, the jury can not disregard such instructions; and, if they do so, their verdict will be set aside.

3. RAILROADS—PASSENGERS—CONTRIBUTORY NEGLIGENCE.

   The carrier is exonerated when the proximate and moving cause of the injury was the act of the injured passenger himself; since the rule is general that no one can charge another in damages for negligently injuring him where he himself failed to exercise due and reasonable care in the premises.

4. RAILROADS—PASSENGERS—CONTRIBUTORY NEGLIGENCE.

   A passenger who voluntarily and unnecessarily places himself in a position of danger can not hold the railway responsible for injuries of which his position is the efficient cause; as for instance, his riding on the platform of a moving car, contrary to the request of the conductor.

5. RAILROADS—REQUISITE CARE—INTOXICATION.
    The self inflicted disability of intoxication will not excuse the wayfarer from the exercise of such care as is due from a sober man.

JOHN BRANNON, W. W. BRANNON and W. MOLLOHAN for plaintiff in error:

I.—*Established facts do not support charge of negligence.*—54 Am. and Eng. R. Cases, 640 and citations there given.

II.— *Where injury results from voluntary exposure to danger, no right of recovery.*—Patterson's R. Acc., 272 and 273; 2 Beach on Law of R. §§ 860, 993 and 977; Beach on Con. Neg. 149; 11 S. E. R. 187; 2 Wood, R. L. § 303; 18 Am. St. R. 544; Deering on Neg. 92; 78 Va. R. 645; 35 W. Va. 389; Schouler's Bailments and Carriers, § 652, p. 707 note 3; Beach on Con. Neg. 286 and note 3; 59 Am. & Eng. R. Cases, 516; 2 Beach R. L. §§ 997, 988; 47 Am. & Eng. R. Cases, 580, 594 and 595; Bailey on Master's Li. for Inj. to Serv. p. 400.

III.—*Intoxication as bearing on contributory negligence.*—4 Am. & Eng. Enc. of Law p. 78, § 34 and cases there cited; 37 W. Va. 87; 19 S. E. R. 863; 2 Beach on L. of R. § 979; Beach on Con. Neg. p. 209 and note 6; Hutch. on Carriers (2d Ed.) § 668 and note 2; 60 Am. & Eng. R. Cases, 180; 71 Tex. 361; 52 Am. & Eng. R. Cases, 633, 645; 2 Am. & Eng. Enc. Law, 748; 58 Am. & Eng. R. cases, 519; 115 Mass. 239; 47 Am. & Eng. R. Cases, 614; 19 S. E. R. 578.

IV.—*Evidence of exceptor no longer rejected.*—Code of W. Va. c. 131, s. 9; 20 S. E. R. 686.

JOHN J. DAVIS, C. C. HIGGINBOTHAM and G. E. PRICE for defendant in error. JOHN J. DAVIS and C. C. HIGGINBOTHAM cited 32 Atl. Rep. 175; Thomp. Carr. Pass. 197; 43 Am. Dec. 346; Beach. Cont. Neg. §§ 54, 395, 144; 11 Gratt. 697; 29 Gratt. 431; 14 How. 468; 102 U. S. 451; Cooley, Torts, 768, 812; 35 W. Va. 390, 403; 1 Harris, Dam. by Corporations § 341; 2 Am. & Eng. Enc. Law, 748, note and numerous authorities ,cited; Bish. Non-Contract Law, § 513; Thomp. Neg. 1174 and authorities cited; 39 W. Va. 366; 2

Am. & Eng. Enc. Law, 759 and authorities cited; 1 Greenl. Ev. §§ 10, 421; Bart. Law Pr. 732; 32 W. Va. 494; 9 W. Va. 616; 21 W. Va. 225; 31 W. Va. 662; 11 Gratt. 87; 21 W. Va. 370; 34 W. Va. 155; 7 W. Va. 348.

ENGLISH, JUDGE:

This case was before the Court in the year 1894. It was submitted on the 22d day of January, and decided on the 11th day of April in that year; being then reversed, the verdict set aside, and a new trial awarded the defendant. 39 W. Va. 366 (19 S. E. 578).

The action was brought on the 29th day of August, 1891, in the Circuit Court of Lewis county, by John H. Fisher, suing by his next friend, John S. Fisher, to recover damages from the West Virginia & Pittsburg Railroad Company for personal injuries alleged to have been received by the plaintiff by reason of his being allowed by the conductor of the train, while being carried as a passenger on the train, to ride on the platform of the car in an intoxicated condition, and, in consequence of the negligent conduct of the conductor in allowing him to remain on said platform, he was thrown from the platform or steps of the car, and had his feet crushed by the wheels of the car. The case was again tried before R. G. Linn, special judge; and on the 13th day of March, 1895, the case was again submitted to a jury, and, after the evidence of the plaintiff had been fully introduced and heard in chief, the defendant moved to exclude the plaintiff's evidence from the jury, which motion was overruled. The defendant then introduced its evidence, and a verdict was rendered for the plaintiff for five thousand dollars. The defendant thereupon moved to set aside said verdict, because the same was without and contrary to the evidence, was against and contrary to the instructions of the court to the jury, was excessive, and for other errors of law, and to grant it a new trial, which motion was overruled, and the defendant excepted, and took a bill of exceptions, setting forth the evidence heard by the jury. The court rendered judgment upon the verdict, and the defendant applied for and obtained this writ of error.

24

The salient facts upon which this suit was predicated appear to have been that the plaintiff, a young man, a little over twenty years of age, who resided with his father in the town of Buckhannon, had gone to the town of Weston on the 18th of October, 1890, and, while there, had indulged in drinking too freely. On the afternoon of the 20th of the same month, he started with his father to return to the town of Buckhannon, on a train belonging to the defendant, boarding it at Weston. The train was a mixed train, having but one passenger car. The plaintiff's father took a seat in the car, but the plaintiff remained on the front platform of the car, and refused to go in when requested by the conductor. The plaintiff had been drinking before boarding the train, and had a bottle of whisky with him, from which he took a drink or two after leaving Weston. While the train was running at a moderate speed, plaintiff went on to the steps leading from the platform, holding to the iron railing on each side. For some purpose, he let go of the railing with his left hand, and just then the train gave a lurch, and he was thrown from the train, but for a time held to the railing with his right hand, but finally, releasing his hold, he fell to the ground, the hind wheels of the coach passed over his feet, and crushed them to such an extent that amputation was necessary.

The first error relied on by the plaintiff in error is claimed to consist in the action of the court in refusing to strike out the plaintiff's evidence, the same failing wholly to sustain the plaintiff's action. The plaintiff in error, however, after making its motion to strike out the plaintiff's evidence, proceeded to introduce its own testimony, and this Court held in the case of *Core* v. *Railroad Co.*, 38 W. Va. 456 (18 S. E. 596) that "if the defendant, after the court has overruled its motion to exclude the plaintiff's evidence on the ground of insufficiency, proceeds with its defence, and introduces its evidence, this Court will disregard such motion, and will not reverse the judgment, unless it appears that the whole evidence is insufficient to justify the verdict of the jury." And the same, in substance, has been held in other cases by this Court, and for this reason we must regard this assignment as not well taken.

The next assignment of error relied on is to the action of the court in refusing to set aside the verdict as being without evidence to support it, and this may be considered in connection with the third assignment of error, claiming that it consisted in refusing to set aside the verdict as contrary to the evidence, the said verdict being manifestly contrary to the evidence. It appears by the testimony that on the door of the passenger car there was a metal plate, on which was printed, in plain letters, "Passengers not allowed to ride on the platform." The plaintiff came on the train with his father, who went inside, and took a seat, while the plaintiff remained on the platform, although it appears that there were several vacant seats on the inside of the car. When the conductor took up the plaintiff's ticket, he says: "I then asked him very kindly to come inside, and get a seat. He said he would be in directly." After he got through taking up the tickets, "young Mr. Fisher still rode out there. I went to him again about three miles from Weston; asked him to come in and get a seat." He refused to come in. At the instance of the plaintiff's father, the conductor went to him again, and requested him to come in. The plaintiff then got very angry, and said "he had paid his fare, and he would ride where he damned pleased." After the accident, the conductor states that he backed the car, and went to the plaintiff, and found him raised up on one elbow, lying down, looking at his feet, and asked him how in the world did he come to fall off. He said he leaned out, and looked around the curve, and lost his balance, and fell off, and that the hind wheels of the coach passed over his feet. And while it is true that the plaintiff contradicted this statement of the conductor as to what he said when he was asked how it happened, yet it must be remembered that the plaintiff, lying on the ground with his feet mashed off, and under the influence of liquor, was not in a good condition to remember accurately what was said; but when the plaintiff, in his testimony, undertakes to relate how the accident happened to him, he does not differ very materially from what the conductor says he told him when he first reached him after the accident. He says: "I was standing on the platform, may be one step

down on the steps. I had one hand holding on to the iron rail in front of the coach, and the other hold of the iron next to the coach. I let loose with my left hand, and still held on with my right hand; and the train made a sudden lurch, and threw me off." And the conductor says he never saw him on the step at all; that he was sitting down on top of the platform, with one foot down on one step of the platform, when he saw him. So, according to the plaintiff's own statement, he must have arisen from that position, as he was standing on the step holding to the railing with his right hand when the accident occurred.

Now, as to the conversation detailed by Mrs. Brannon as having occurred between her and the conductor when she was on the train, as she says, two or three days, perhaps the next day, after; can the admission made to her by the conductor on that occasion bind the defendant. She states that the conductor said it was his duty to have compelled him to go in, or stop the train, and put him off. He said "it was against the rules for any one to ride there, and said he never hated anything so much in his life; that he knew he had not done his duty." As to declarations and admissions made by an agent, 1 Greenl. Ev. § 113, says: "A kindred principle governs in regard to the declaration of agents. The principal constitutes the agent his representative in the transaction of certain business. Whatever, therefore, the agent does in the lawful prosecution of that business is the act of the principal whom he represents; and, where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject matter will also bind him, if made at the same time and constituting part of the res gestæ. * * * The party's own admissions, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard to a transaction then depending *et dum fervet opus*. It is because it is a verbal act, and part of the *res gestæ*, that it is admissable at all." See *Railroad Co.* v. *Gallahue's Adm'rs*, 12 Gratt. 655 (eighth point of syllabus). The same witness says that "plaintiff came to Weston on Saturday, and I knew he was drinking. He was a young boy, away

from home; my sister's child. Saturday night he went to Willie Hall's, and had lost his hat. I went over, and asked Willie (I knew he was not capable of taking care of himself) if he would take him home. He said he would do it. Willie had some position on the train, the Buckhannon train. Willie did not do it, and the next morning his father came over." This testimony shows that plaintiff had been on a spree at Weston, and also shows the effect that liquor had on him, and accounts for the solicitude of his father concerning him while on the platform of the car; and, notwithstanding the plaintiff's recent experience, he came on the train provided with a bottle of whisky. Returning again to the immediate circumstances attending the accident, the conductor says, when he last saw him, he was sitting down on the platform with his feet on the first step. Now, what was his object in rising and taking his position on the steps with one hand on each railing? The most plausible reason for this act which suggests itself to my mind is that he did it for the purpose of getting beyond the range of the car door, and escaping the view of his father and the other passengers, and that he let go of the railing with his left hand for the purpose of reaching his flask in his pocket, with the intention of taking another drink unobserved, when, the car making a short turn around the curve, he was thrown to the ground by the centrifugal force.

Proceeding to apply the law to these facts in this case, let us inquire first whether the intoxicated condition of this unfortunate young man should excuse his negligent conduct, and entitle him to a recovery in this case. In the case of *Smith* v. *Railroad Co.*, decided by the supreme court of North Carolina May 9, 1894, and reported in 19 S. E. 863, Shepherd, C. J., delivering the opinion of the court, says: "We are also of opinion that there was error in ignoring that universally established principle in the law of contributory negligence which imposes upon one who has voluntarily disabled himself by reason of intoxication the same degree of care and prudence which is required of a sober person. This is so well established that it would seem unnecessary to cite authority in its support." Patterson, in

in his work on Railway Accident Law (page 74, § 76) says: "The fact that the person injured was intoxicated at the time of the injury will not relieve him from the legal consequences of his contributory negligence;" citing numerous authorities.   1 Thomp. Neg. p. 430, § 4, after speaking of deafness, says: "Nor will the self inflicted disability of drunkenness excuse the wayfarer from the exercise of such care as is due from a sober man;" citing *Railroad Co.* v. *Bell*, 70 Ill. 102; *Railway Co.* v. *Riley*, 47 Ill. 514.   1 Shear. & R. Neg. § 93, thus states the law on this question: "The fact that the plaintiff was intoxicated at the time of the injury, while competent and material evidence to lay the foundation of a charge of contributory negligence, is not of itself sufficient to charge him with such negligence as will defeat his action, unless it is proved or reasonably to be inferred from the circumstances that it prevented him from taking ordinary care to avoid the injury." Pierce, R. R. p. 295, says: "The intoxication of the person may contribute to the injury by leading him to place himself in an exposed position, or preventing the full use of his faculties, and may be put in evidence to prove negligence on his part; but, unless it contributes to the injury, it will not affect his right of action." In the case of *Strand* v. *Railway Co.*, 67 Mich. 380 (34 N. W. 712) it was held: "A man can not voluntarily place himself in a condition whereby he loses such control or his brain or muscles as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and thereby contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor."

But if we were warranted in saying, in view of the testimony in this case, that the plaintiff was not under the influence of liquor, was his conduct after taking passage on this train consistent with the dictates of care and common prudence, or should it be characterized as negligent? He refused, in response to repeated requests of the conductor, and with the notice on the door before him, to go into the passenger car.   Although, it is shown, there was plenty of room, yet he persisted in remaining on the platform.   And what does the law say of such conduct on the part of a pas-

senger? In the case of *Graville* v. *Railroad Co.*, 105 N. Y. 525 (12 N. E. 51) it was held that "it is the duty of a passenger standing on the platform of a steam railroad car to go inside the car when requested so to do by a trainman, if there is standing room inside, although there are no vacant seats." Pat. Ry. Acc. Law, § 272, states the law on this question thus: "It is well settled that a passenger who voluntarily and unnecessarily places himself in a position of danger can not hold the railway responsible for injuries of which his position is the efficient cause; as, for instance, where his injuries result from his crossing the line in front of a moving train, whose approach is known to him, * * * or from his riding on the platform of a moving car before the train comes to a stop," citing *Secore* v. *Railroad Co.*, 10 Fed. 15. But, as before stated, it has been held that the failure of the railway to perform its duty of providing the passenger with a seat will excuse his contributory negligence in riding on the platform. Yet this doctrine can not be regarded as reasonable, for, if the passenger can not obtain a seat, he may stand within the car, or he may refuse to proceed on the journey, and may hold the railway responsible for damages resulting from its breach of contract; but injuries resulting primarily from his voluntarily putting himself in a position of such obvious danger as that of riding on the platform of a car in motion can not be said to have been proximately caused by the failure of the railway to provide him with a seat. Beach, Contrib. Neg. § 149, says: "It is not negligence *per se* for a passenger to ride upon the platform of a railway car, nor is it negligence to stand upon the platform of cars in motion when there are no vacant seats inside the car; but, as a general rule, voluntarily and unnecessarily to stand or ride upon the platform is such negligence as will prevent a recovery for injuries received while there. If there is even standing room within the car, it is negligent to occupy the platform." Schouler, in his work on Bailments and Carriers, after speaking of the duties owed by carriers to passengers under their charge, says: "Where the injury in question was proximately occasioned by the act of God or the public enemy, or even by accident and misfortune in the lesser

sense above implied, and without his own fault, the carrier is certainly absolved from liability. And reason and common justice demonstrate, too, that the carrier is exonerated when the proximate and moving cause of the injury was the act of the injured passenger himself; since the rule is general that no one can charge another in damages for negligently injuring him, where he himself failed to exercise due and reasonable care in the premises." The rule in Virginia is stated in Bailey's work on Master's Liability for Injuries to Servant (page 399) as follows: "That one who is injured by the mere negligence of another can not recover any compensation for his injury if he, by his own ordinary negligence or willful wrong, contributed to produce the injury of which he complains, so that, but for his concurring and co-operating fault, the injury would not have happened to him, except where the direct cause of the injury is the omission of the other party, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences of such negligence" —citing *Dun* v. *Railway Co.*, 78 Va. 645; *Rudd's Adm'r* v. *Railway Co.*, 80 Va. 549; *Railroad Co.* v. *Yeamans*, 86 Va. 860 (12 S. E. 946). In West Virginia the rule is laid down in the case of *Gerity's Adm'x* v. *Haley*, 29 W. Va. 98 (11 S. E. 901) as follows: "Where negligence is the ground of the action, it rests upon the plaintiff to trace the fault of his injury to the defendant, and for this purpose he must show the circumstances under which the injury occurred; and if, from these circumstances, so proven by the plaintiff; it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has, by proving the circumstances, disproved his right to recover, and, on plaintiff's evidence alone, the jury should find for the defendant." This ruling was followed in the case of *Butcher* v. *Railroad Co.*, 37 W. Va. 180 (16 S. E. 457) and several other cases, and, as we think, correctly states the law.

It appears from the testimony that at the time the plaintiff received the injury complained of, the defendant had no rule requiring the conductor to stop the train and put a passenger off, if he persisted in riding on the platform, and

refused to obey the conductor's request to come inside of the car; and, if the conductor had taken that course, a suit would most probably have been the consequence of ejecting him from the train. It must be presumed that the conductor wished to treat the plaintiff in a considerate and gentlemanly manner, in the presence of his father and the other passengers; and, acting on his best judgment, he did not consider it his duty to attempt to force him into the car, and create an excitement among the passengers, when he says he did not think he was sufficiently drunk to be unable to care for himself; and then the conductor says he did not see plaintiff after he took the dangerous position standing on the steps, and, being ignorant of the fact that he had thus exposed himself to danger, he could not be blamed for not interfering and forcing him to enter the car.

The instructions asked for by the defendant were given to the jury, and read as follows, the court, however, modifying the last instruction, D, and refusing to give instruction 6, which action appears to have been excepted to: Instruction No. 1: "The jury are now instructed that the plaintiff, as passenger on the defendant's car, as a matter of law, is presumed to have taken upon himself all the risk necessarily incident to that mode of traveling; and if the jury believe from the evidence that, without the fault of the defendant, but by inevitable accident, plaintiff was injured, the jury should find for the defendant." Instruction No. 2: "The court instructs the jury, as a matter of law, that a passenger upon a railroad train takes all the risk attending that mode of travel, except such as may be caused or incurred by the negligence of the railroad company or its servants, and, unless such negligence by the defendant is shown by the evidence, the jury should find for the defendant." Instruction No. 3: "The court instructs the jury that, as a matter of law, a regulation of a railroad company which forbids passengers to stand upon the platform while the car is in motion is a reasonable and proper rule; and if a passenger, in violation of such regulation, unnecessarily exposes himself, he does so at his own peril." Instruction No. 4: "If the jury believe from the evidence that both the

plaintiff and defendants were guilty of negligence, that such negligence of both was concurrent or running together, and co-operated to produce the injury complained of, they should find for the defendant." Instruction No. 5: "If the jury believe from the evidence that the injury in the declaration mentioned was the result of the concurrent negligence of both the plaintiff and defendant, the jury has no right to apportion the fault, and to find a verdict for the plaintiff upon that ground, but in such case they should find for the defendant." Instruction No. 6: "The court instructs the jury that railroad companies are only required to exercise due care that a passenger is not injured through their fault, and they are not required to exercise such supervision over him as absolutely prevents him from being injured by his own fault." Instruction No. 7: "The court instructs the jury that a railroad company has no right or authority under the law to impose upon its passengers any restraint even to enforce its reasonable rules." Instruction No. 8: "The court instructs the jury that, in determining the question of whether the plaintiff was guilty of contributory negligence, they may take into consideration the condition of the plaintiff at the time—that is, if he were intoxicated at the time of the injury, or partly so—they may take this fact into account in determining whether he was guilty of contributory negligence." Instruction No. 10: "The plaintiff to recover must have observed ordinary care to avoid the injury, and, if he does not do so, he can not recover." Instruction B: "The court further instructs the jury that, in enforcing any reasonable regulation or direction, a railroad company is not allowed to treat its passengers as children, or to put them under restraint." Instruction C: "The court instructs the jury that if they believe from the evidence that the plaintiff was riding on the platform of the defendant's car in such a state of intoxication as to be careless and heedless of the danger to which he was exposed, and the conductor was aware of his position and exposure to danger, it was the duty of said conductor to use only ordinary precautions for his safety, such as calling his attention to the danger and the rules of the company forbidding such exposure, but such conductor would not be re-

quired to exercise or impose any restraint upon the plaintiff." And the defendant moved the court to give to the jury instruction marked "A," to which the plaintiff objected, and the court sustained said objection, and refused to give said instruction, to which ruling said defendant excepted, which said instruction "A," is in the words and figures following: Instruction A: "The court instructs the jury that if a passenger voluntarily puts himself in a dangerous position, and, by reason thereof, is injured, he can not recover from the defendant." And the defendant moved the court to further instruct the jury by giving to the said jury instruction marked "D," in the words and figures following: Instruction D: "The court instructs the jury that it is the duty of a passenger unnecessarily riding on the platform of a car in motion to go into the car when requested by the conductor or others in charge of the train, if there be only standing room in the car; and, if the jury believes from the evidence that his failure to obey such request contributed to the plaintiff's injury, they should find for the defendant,"—to the giving of which the plaintiff objected, and thereupon the court modified the said instruction D by striking from the end thereof the following words: "And, if the jury believe from the evidence that his failure to obey such request contributed to the plaintiff's injury, they should find for the defendant." And the court gave the jury the remainder of the said instruction, to which ruling and opinion of the court the defendant excepted.

We regard these instructions as propounding the law correctly, and if the jury, in considering their verdict, did not utterly fail to apply the law therein stated to the facts proven, we can not see how they arrived at the conclusion they did. And we think the fourth assignment of error, that "the court erred by refusing to set aside the verdict as contrary to the instructions of the court, the same being in direct conflict with the said instructions," was well taken, and the verdict of the jury should have been set aside, and a new trial awarded for that reason. Looking through the entire evidence in the case, our conclusion is that the proximate cause of the defendant's injury was his own obstinate and perverse conduct in refusing to obey the reasonable re-

quests of the conductor, in voluntarily subjecting himself
to the influence of liquor, and in needlessly and negligent-
ly assuming the dangerous position on the steps of the car
from which he fell; and I fail to see what duty owed to the
plaintiff by the defendant was violated by the conductor.

For these reasons, the judgment complained of must be
reversed, the verdict set aside, and a new trial awarded the
defendant, with costs to the plaintiff in error.

HOLT, PRESIDENT, (*dissenting*):

This case has been before two juries, and each one found
that the defendant did not, in carrying an intoxicated pas-
senger, use such care to carry him safely and securely as
the law of their contract and the exigencies of the occasion
demanded.    Three facts of some bearing in certain aspects
of the case were brought out on this trial which did not ap-
pear on the first trial at all, or with the same distinctness
and certainty:    (1)   On the first trial, the plaintiff did not
say that he was not notified by the conductor to get off the
platform.    On this trial he denies that the conductor made
any such request; and, as to the making any such request
at the instance of plaintiff's father, his denial is supported
by the testimony of another witness.  (2)  On the first trial,
the conductor, in his evidence, stated that it was a rule of
his company, "if the passenger refused to leave the plat-
form, the conductor should stop the train, and put him off,
or make him go inside."    On this trial the defendant com-
pany proved by the same conductor that they had no such
rule at that time, and had none such until the January fol-
lowing, that his statement on the first trial was an error.
(3) On the first trial, the conductor testified that he had
asked the plaintiff twice before that time (that time made
the third time) to go in, and also one of the brakemen had
tried to get him in.    This time the conductor testified that
Graves, one of the brakemen, insisted on the plaintiff's go-
ing in; that they had several words about it, and came near
getting into a racket.    "In fact, I had to go to Graves, and
tell him not to go too fast with him."  (4) The tenor of the
rest of the testimony is very much the same, except that the
fact is now brought out more distinctly that plaintiff's rea-

son was submerged with whisky; that, before he fell off, his ordinary rational faculties were so far gone that he was unconscious of his incapacity to take care of himself. He did not appreciate the danger of riding on the platform; was rash enough to sit down on the platform with one foot on the step; and was utterly heedless of the probable consequences of such conduct. This part of plaintiff's case, constituting the state of negligence, the remote cause of the injury, the condition in which the conductor's failure and refusal to bring him in off the platform intervened as the sole proximate cause of the injury, is now, in my opinion, put beyond the reach of any serious questioning. This young man, twenty years of age, obviously intoxicated to some degree of drunkenness, was accepted by the railroad company as a passenger, under the common-law obligation to carry him safely and securely. When he and his father entered the train, the son stopped on the platform. The father was a witness on the first trial. He died before this one, but his testimony on the first trial was read to the jury on the second. He says that becoming uneasy, he went out, and told his son he had better come into the car. The plaintiff told him he would come in, in a few minutes. As he did not come in, the father told the conductor to go out, and bring him into the car. The conductor went out, and came back without him. "And he came to me, and told me that he was in no danger; as long as they didn't stagger, they were all right." The conductor's evidence on this point is: "John S. Fisher wanted me to go out and speak to his son. He said that he thought he was drinking a little, and he was afraid he would get hurt. I didn't go right away, but after a little I did. It was between there and Seymore Station. That made three times that I had asked him to come in. That time he got very angry, and, using his own words, said, 'He had paid his fare, and he would ride where he damned pleased.' I went back, and told him his son was sitting on the platform. He had been standing down on the car step. To relieve his father, I said I didn't believe his son was drinking enough to fall off." At another place, he says it was a dangerous place for a sober man to ride, and still more so for a drunken

one. He thus quieted the apprehensions of the father for a moment, for in less than ten minutes the young man was thrown off. Mrs. Judge Brannon, the aunt of the plaintiff, two or three days after the accident, was on the train going over to Buckhannon. On this point her testimóny, certainly competent in fact, and for the purpose of discrediting the conductor, and no where objected to, is as follows: "The conductor came to me, and asked me to come to the rear of the train, and look where the accident happened. When we returned to our seats, he sat down by me, and commenced to relate the whole affair. He said that Johnnie was standing on the platform, and was intoxicated. He said John S. Fisher had requested him to go and bring him into the car. He said he did not tell him to come in, from the fact that it would raise an excitement. He said he told Mr. Fisher his son was not drunk enough to be in any danger; and about ten minutes after that he fell off, and he never hated anything so much in his life." Some comment is made in the opinion of the majority of the court on a part of the testimony of Mrs. Judge Brannon which is incompetent, because it gives the admissions of the conductor made at a time when it was not a part of the *res gestæ*. See 1 Am. & Eng. Enc. Law (2nd Ed.) p. 1143. This, however, does not apply to the whole of her testimony. None of it was objected to when the question was asked and the answer given. There was no motion to strike out, or for instruction to disregard it. It was not made one of the grounds for the motion for new trial. It is not assigned as one of the grounds of error, either in the petition or in the briefs or arguments of counsel. I do not think it the duty of the appellate court in such case to sift out the incompetent phrases *sua sponte*, where both parties wish it to remain in, because, perhaps, dispensing with the inconvenience of calling a witness who heard him say the same thing *dum fervet opus*. Besides it has a bearing on the credibility of the witness, who is contradicted by the plaintiff on the question of the conductor's having requested him to come in. It has been held that a party demurring to the evidence waives all objections to the competency of the evidence. Elliott, App. Proc. §§ 689, 781.

The particular manner in which an admitted truth has been introduced into the cause as evidence does not seem to be of any importance. *Chapise* v. *Bane*, 1 Bibb, 612. But this, in my view, has no great bearing. I take the case for this occasion as the conductor himself and John H. Fisher, the father, have made it. This case is only an instance under the general rule that the contributory negligence of the injured party, in order to constitute a defense, must have contributed as the proximate cause of the injury. If it were the remote cause, or a mere condition of injury, it is no bar to the plaintiff's action. It is not a proximate cause when the negligence of the defendant is an efficient intervening cause. 2 Wood, R. R. (Minor's Ed.) p. 1448, § 319a. Contributory negligence of plaintiff is no bar to his action when it appears that defendant might, by the exercise of ordinary care, have prevented the injury in spite of such negligence. See *Coasting Co.* v. *Tolson*, 139 U. S. 551 (11 Sup. Ct. 653); *Currico* v. *Railroad Co.* 35 W. Va. 389 (14 S. E. 12); *Washington* v. *Railroad Co.* 17 W. Va. 190. It is the absence of such as is required by the circumstances. *Blaine* v. *Railroad Co.* 9 W. Va. 252. "Therefore, where the negligence of the injured party is seen by the employes of the railway company in time to prevent injury from such negligence, their failure to exercise care to prevent the injury will render their employer liable." 2 Wood, R. R. p. 1449, note 1; Cooley, Torts (2d Ed.) p. 810; Pollock, Torts, 374 *et seq.;* 1 Beven, Neg. 176. Here the railroad company, by exercising ordinary care, had the last opportunity of preventing the accident. Bish. Non-Contr. Law, § 463; Thomp. Carr. Pass. 243; Beach, Contrib. Neg. § 33; 2 Redf. R. R. 255, 256; Patt. Ry. Acc. Law, §§ 44, 55, *et seq.; Railroad Co.* v. *Cooper* (Ind. Sup.) (22 N. E. 340); *Toomey* v. *Railroad Co.* (Cal.) 24 Pac. 1074; *Freer* v. *Cameron*, 4 Rich. Law, 228; *Johnson* v. *Railroad Co.* 20 N. Y. 65; 1 Shear. & R. Neg. § 99; Busw. Pers. Injury, p. 200, § 134; Smith, Neg. (by Whitaker) 374; Whart. Neg. §§ 306, 323, 340, 389a; Bigelow, Torts, 538.

To prevent injury to a passenger, the common carrier is bound to the highest degree of skill, care, and diligence, and generally liable for the slightest negligence; and th

degree of care exacted is greater than that to be exercised in respect to a stranger or trespasser. *Carrico* v. *Railway Co.* 35 W. Va. 389 (14 S. E. 12); 2 Rap. & M. Ry. Dec. Dig. 138–140; 1 Harris, Dam. Corp. § 341; 2 Am. & Eng. Enc. Law, p. 748. Whether the negligence of plaintiff was the proximate cause is a question for the jury. *Sheff* v. *City of Huntington,* 16 W. Va. 307.

Although the general rule is that no man by his wrongful act can impose a duty on another, yet this does not apply where the efficient, direct, and sole proximate cause of the injury intervenes between the plaintiff's state of negligence and the damage complained of. There is nothing remarkable about this case but the exceptional distinctness with which it exemplifies and makes the reason of this rule. Taking alone the evidence of the conductor, we have a case of the plaintiff in a state of negligence riding on the platform, unconscious of his incapacity to take care of himself, heedless of the danger of falling off. This goes on under the eyes of the conductor from the time plaintiff entered the train until he fell off. His drunkenness was obvious. He was drinking when he came on, and kept drinking as he rode. His recklessness of danger, his heedlessness of the probable consequences of such conduct, were equally obvious, and observed by the conductor; for he saw him standing on the steps, saw him down on the platform with one foot on the step, He requested him to come in, as he says, more than once, and always unavailingly. He saw the brakeman Graves insisting on his going in, who, no doubt, would have succeeded had he been let alone, certainly if he had been authoritatively assisted, but he made Graves desist. The father of the boy told the conductor that his son was drinking, and he was afraid he would fall off, and requested the conductor to make his minor son come in—bring him in. Here the remote cause, the state of negligence of the passenger thus riding on the platform, the mere condition of the injury, comes to so clear a marking off from the proximate cause of the injury that it is seen at once. In this sharpness with which the remote cause is separated in time and distinctness of efficiency from the proximate cause, the case is indeed remarka-

ble, but not in the rule of law of which it furnishes so striking an illustration.

The conductor, as he says, had twice tried the efficiency of a mere request, without effect. Why did he not exercise the care which the circumstances demanded? 2 Wood, R. R. p. 1426, § 318a. Why did he not discharge the duty which was so obviously dictated, and measured by the exigencies of the occasion? *Railroad Co.* v. *Jones*, 95 U. S. 439, 442. The state of danger of the passenger was known to him throughout the whole seven miles. It was expressly brought to his attention by the anxious father, whose request was based on the apprehended intoxication of his son, and his exposure to danger. *Isbell* v. *Railroad Co.* 27 Conn. 404. Why did he not use the ordinary and necessary precautions for his safety? *Carrico* v. *Railway Co.* 35 W. Va. 389 (14 S. E. 12); *Fisher* v. *Railroad Co.* 39 W. Va. 366 (19 S. E. 578). Instead of discharging the plain and imperious duty imposed upon him in such circumstances, he returned to the father, and told him his son was in no danger. Why did he not make him come in? "Bring him in," that was the language of the father's request. Any conductor of ordinary knowledge, care, and prudence, seeing what he saw, would have done so, according to the finding of two juries. But he tells us on this trial that the company had no rule requiring him to make the passenger riding on the platform come in, and, if he refused, stop the train, and put him off. But he needed no rule. The father of the minor had explicitly requested it. He saw for himself the urgent necessity of it; and a statute made for such cases, constituting him a conservator of the peace, authorized and empowered him to command it, and to enforce his command, without regard to any rule of the company. Code, c. 146, s. 31. The common-law itself makes him a *quasi* officer, clothed *pro hac vice* with such powers amply sufficient to have saved this drunken boy from the consequences of his own folly. But the statute evidently contemplates that such a rule will be made. Code, c. 54, s. 34. How came it, we may remark in passing, that this company was running its trains without having this ordinary rule on this important subject? But, in my opin-

ion, it was plainly the right of this conductor to put an end to this passenger's riding on the platform; and, at least, after the request of the father, it was as plainly his duty as his right, unless we are to hold that the exigencies of the occasion then staring the conductor in the face, which dictated and measured the duty, were met by doing only, and that for the third time, what he tells us in his testimony had then become a vain and idle thing. But, in my view, the case turns on no such question as the company then having a rule on the subject. The fact of plaintiff's self incapacitation by drunkenness, and self exposure to danger, are the sole grounds put forward for setting aside the verdict and awarding a new trial. These are the very circumstances which constitute the state of negligence, the remote cause, the condition, the occasion, the exigencies of which dictated and measured the duty of the company, when brought to its notice in time to avoid and prevent the injury, and to comply with the request of the father. This a conductor of ordinary knowledge, care, and prudence would have done; this the conductor in this case failed and neglected to do. And a jury of good and lawful men, of common sense, of common prudence, of experience in practicial affairs, who had learned by observation what competent conductors of ordinary care and prudence do under such circumstances, were, by the issue made up, asked the questions: What was the duty of this conductor on this occasion? what were the exigencies which imposed and measured the duty, if any? and did the conductor discharge the duty of taking ordinary care under the circumstances? This jury, like the first one, found that the duty of taking ordinary care existed, but was not discharged; that the neglect or refusal of the conductor to make this boy come in off the platform, as requested by his father intervened as the sole efficient and proximate cause of the injury. Who are to judge if not the twelve good and lawful men of common sense and common observation, of what is prudent under such circumstances, under the direction of the learned judge who presides at the trial? On what principle or rule of settled law, where the sole question is, what would a competent

conductor of ordinary care and prudence do in such a case (3 Rap. & M. Ry. Dec. Dig. p. 287 *et seq.*) can the defendant ask this second verdict to be set aside? When and how is this litigation to come to an end? Is some essential point wholly without evidence, or does it manifestly appear that this conductor discharged the duty that the exigencies of this case imposed, when he left this drunken boy sitting on the platform, with one foot on the step, and came back and told his father that he was in no danger? No doubt, they had heard the learned circuit judge instruct the jury that if the plaintiff in the given case was drunk, and sitting on the railway track as a trespasser, and his peril was discovered in time by those in charge of the train to have prevented injury, and those in charge of the train did not use proper care and due diligence to avoid the accident, and damage resulted, the defendant company was liable. See *Raines* v. *Railway Co.* 39 W. Va. 50 (19 S. E. 565); *Railway Co.* v. *Joyner's Adm'r* (Va.) 23 S. E. 773; Bish. Noncont. Law, § 1037. How is it possible to expect the jury to see and understand why less care is due the drunken passenger who exposes himself to danger than is due the stranger or trespasser on the track? We can not insist on the distinction, if any, between negligence by omission and negligence by commission, for it so happens that in this case we have them both; not only the willful disregard of the father's request, but an active deception practiced upon him, which kept him, we may suppose, for the moment, from looking in his own feeble way after the safety of his son; but that moment was enough, for in less than ten minutes the boy was thrown off, and both feet were ground off up to the heel.

In my opinion, the plaintiff has brought his case within the meaning of the rule as laid down in *Carrico* v. *Railway Co.* 35 W. Va. 389 (point 9) (14 S. E. 12) and other cases, such as *Isbell* v. *Railroad Co.* 27 Conn. 404, cited in Whart. Neg. § 34, and within the true meaning and spirit of the rule as laid down in this case when here before, when read, as it must be, in connection with the above named Case of Carrico, cited therein with approval. See *Fisher* v. *Railroad Co.* 39 W. Va. 366 (point 3) (19 S. E. 578.)

If the conductor has used the ordinary precautions for the safety of his passenger, such as was dictated and measured by the occasion, seeing, as the conductor did, his dangerous position and conduct therein, and insensibility to and reckless disregard of such danger, the resulting injury would have been prevented and avoided. If the conductor had properly aided his brakeman Graves in his effort to make the drunken passenger go in off the platform, instead of commanding him to desist, the injury would have been prevented. If the conductor, seeing the condition, the place of riding, the conduct, and the manner of the accident, as we see it by his testimony, of this passenger, twenty years of age, and under the control of his father, had heeded his request to bring him in, instead of misleading him as to the danger of his son, and thus throwing his actual guardian off his guard, the accident, in all likelihood, would not have happened.

To sum up: We have endeavored to show that the rule which governs this case is, if defendant had notice of plaintiff's condition of drunkenness and dangerous position, but did not use ordinary care and diligence, such as was dictated and measured by the exigencies of the occasion, to prevent the injury, he is liable. This rule is supported by authority, and is based upon the broad principle of being in accord with our common sense of right and justice and of humanity, and to that extent it becomes binding law. As far as I can see, this case is not withdrawn from the operation of this rule by any other, based on public policy or general convenience. The maxim, "To him who consents no injury is done," does not apply; for this passenger, when thrown off, had reached the stage of having no rational will and no appreciation of his danger, as his conduct, exhibited to us through the eyes of the conductor of the train, abundantly shows. This rule, applied to the facts of this case, requires that the judgment rendered should stand, in which is impliedly contained at least the following narrow point of law, which is all that the justification of the verdict of the jury requires (how much broader point of law it may comprehend we have no need to say): Where a conductor sees a drunken passenger, twenty years of age, rid-

ing continuously on the platform, and is requested by the father to bring him in, and, instead of taking such ordinary precautions for the safety of the boy as the circumstances known to him required, leaves him there, and, by misrepresentation as to his danger, throws the natural, actual guardian off his guard, and the injury complained of occurs by the boy falling from the running train, such conductor has thereby made his company liable for a breach of duty as a common carrier of passengers. Therefore, with all deference for the different opinion of others on this doctrine of the law, so difficult in its proper application, I think we ought to let this judgment stand.